IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                      *

MICHAEL ALLEN MCNEIL,                 *

        Appellant,                    *

              v.                      *   CIVIL NO.: WDQ-12-3819

STEPHEN A. DRAZIN,                    *

        Appellee                      *

  *     *     *     *     *     *     *     *     *     *     *     *     *

MICHAEL ALLEN MCNEIL,                 *

        Appellant,                    *

              v.                      *   CIVIL NO.: WDQ-12-3706

V. PETER MARKUSKI, JR.,               *

        Appellee                      *

  *     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

Michael Allen McNeil, *pro se*, appealed the final orders

entered on November 5, 2012[1] and November 15, 2012[2] by the United

States Bankruptcy Court for the District of Maryland (the

"Bankruptcy Court"), classifying attorney's fees awarded by the

Circuit Court for Howard County, Maryland (the "Circuit Court")

---

[1] ECF No. 1 at 1 (Markuski).  The designation "Markuski" refers
to the docket in case number WDQ-12-3706.

[2] ECF No. 1 at 1 (Drazin).  The designation "Drazin" refers to
the docket in case number WDQ-12-3819.

in divorce litigation as "domestic support obligations" under 11
U.S.C. § 101 of the Bankruptcy Code.[3] *See* ECF Nos. 1-11
(Drazin), 1-50 at 2 & n.6, 8 (Markuski). For the following
reasons, the Bankruptcy Court's orders will be affirmed.

I. Background[4]

On December 27, 2010, following a highly contentious two-
week trial, McNeil's wife Sarah McNeil was granted a divorce "on
the grounds of cruelty of treatment, excessively vicious
conduct, constructive desertion, and a two-year
separation . . . ." *See* ECF Nos. 1-1 at 6, 1-7 at 1 (Drazin),
1-36 at 2 (Markuski). During the divorce litigation, V. Peter
Markuski, Esquire, was appointed to represent the best interests
of the couple's two minor children, *see* ECF No. 1-46 at 7-8
(Markuski), because the Circuit Court was unsure what visitation
rights McNeil should have with the children. *See* ECF Nos. 1-1
at 12 (Drazin), 1-13 at 1, 1-20 at 1-2 (Markuski). In
particular, McNeil's relationship with his son, who has serious
medical problems, raised concerns, because McNeil frequently
interfered with his son's medical treatment and often did not
administer his son's medication during their visits. *See* ECF
No. 1-36 at 23-24 (Markuski).

---

[3] 11 U.S.C. § 101 *et seq.*

[4] The facts are taken from the records in both appeals. ECF Nos.
1 (Markuski), 1 (Drazin).

2

During their marriage, McNeil was employed as a computer engineer, earning somewhere between $120,000 and $148,000 per year. *See* ECF Nos. 1-7 at 3, 1-14 at 38 (Markuski). Sarah McNeil did not work--she took care of the household and children and devoted significant time to caring for the couple's son. *See* ECF No. 1-36 at 25-26, 43 (Markuski). She had no money of her own, and McNeil handled the couple's financials. *See* ECF Nos. 1-2 at 23 (Drazin), 1-36 at 6, 1-37 at 3 (Markuski). During discovery before trial, McNeil did not properly disclose his finances, failed to comply with court orders requiring him to provide monthly statements for his retirement and other accounts, and failed to explain to the Circuit Court's satisfaction why several of the couple's financial accounts significantly dropped in value over the course of the divorce litigation. ECF No. 1-36 at 2-5, 9-10 (Markuski). McNeil was sanctioned for his conduct during discovery, and his production delays extended the length of the overall litigation and trial. *See* ECF Nos. 1-36 at 6, 1-37 at 36 (Markuski). As a result, Sarah McNeil's attorney, Stephen Drazin, Esquire, and Markuski were forced to devote many more hours to the litigation than would otherwise have been necessary. *See* ECF No. 1-37 at 37-40 (Markuski).

In addition, McNeil filed several motions, appeals, and lawsuits before, during, and after the divorce litigation that

3

required Drazin and Markuski to spend additional hours on the case. *See* ECF No. 1-14 at 28-30, 36-37 (Markuski). He filed at least 13 contempt motions against Sarah McNeil based on visitation issues, Sarah McNeil's allegedly "undue influence" over the children, and access to the children's school and medical records. ECF No. 1-14 at 36 (Markuski). He moved to recuse the Circuit Court judge at least four times. ECF No. 1-7 at 2 (Drazin). He brought appeals--some timely, most not--of virtually every decision of the Circuit Court. *See* ECF No. 1-14 at 28-30 (Markuski). He also sued, *inter alia*, the Circuit Court judge, the Circuit Court, Howard County, the attorneys in the case, and every supervised visitation center at which he spent time with his children.[5] ECF Nos. 1-2 at 23, 1-38 at 2, 1-39 at 2-4 (Markuski). Drazin had to be involved in most of this litigation on Sarah McNeil's behalf, and, because several of McNeil's motions involved the children, so did Markuski. *See* ECF Nos. 1-4 at 22-23 (Markuski), 1-7 at 1-2 (Drazin).

At the conclusion of the divorce litigation, the Circuit Court awarded Sarah McNeil $3000 per month in alimony payments for five years,[6] $1051 per month in child support payments, and a

---

[5] Eventually, Markuski had to supervise McNeil's visitation with his children, because every court-approved visitation center refused. *See* ECF No. 1-38 at 2 (Markuski).

[6] Sarah McNeil was seeking recertification as a dental assistant. *See* ECF No. 1-36 at 28, 41-42 (Markuski). The court determined

4

lump sum payment of $68,414 as an equitable distribution of the couple's property.[7] ECF Nos. 1-36 at 25, 1-37 at 10, 20 (Markuski). She was also awarded 75% of her attorney's fees, payable to Drazin directly, of which $36,788 was due at the end of trial. *See* ECF No. 1-37 at 40 (Markuski). The Circuit Court apportioned Markuski's fees between the couple--60% to McNeil ($21,064) and 40% to Sarah McNeil ($14,042). *Id.* at 41. The Circuit Court ordered McNeil to pay additional fees to Drazin and Markuski in the ongoing litigation following the divorce. *See* ECF Nos. 1-1 at 29-30 (Drazin), 1-14 at 38-42 (Markuski).

On May 10, 2012, after the divorce was granted but before the conclusion of McNeil's several other appeals, motions, and lawsuits, McNeil filed for Chapter 13 bankruptcy. *See* ECF Nos. 1-5 at 1-3, 1-38 at 1-2 (Markuski). On May 24, 2012, McNeil filed his proposed Chapter 13 plan. ECF No. 1-8 (Markuski). On

---

that she would likely be able to adequately support herself and the children after she completed her education. *See id.* at 28, 41-42. Thus, the alimony payments were intended to give her sufficient time to finish school and also ensure that she could devote sufficient time to her children, particularly the couple's son. *See id.* at 43; ECF No. 1-37 at 1-2, 15-16 (Markuski).

[7] The equitable distribution of marital property award would increase to $101,309 if Sarah McNeil was unable to refinance the marital home to relieve McNeil of his obligations under the home's mortgage. *See* ECF No. 1-37 at 9-10, 33 (Markuski). After trial, Sarah McNeil's refinancing was initially approved, but later withdrawn after McNeil sent the bank a letter claiming that she had misrepresented her finances. *See* ECF Nos. 1-26 at 2-3, 1-27 at 2 (Markuski).

July 16, 2012, Markuski filed a proof of claim for $47,936 in attorney's fees. ECF No. 1-52 at 1 (Markuski). On August 16, 2012, Markuski filed a contingent proof of claim for $18,102 in attorney's fees. ECF No. 1-53 at 1-2 (Markuski). On July 31, 2012 and September 4, 2012, McNeil objected to Markuski's proofs of claim. ECF Nos. 1-19 at 1, 1-32 at 3 (Markuski). On September 3, 2012, Drazin filed a proof of claim for $60,604 in attorney's fees. ECF No. 1-1 at 1 (Drazin). On September 24, 2012, McNeil objected to Drazin's proof of claim. ECF No. 1-6 at 1 (Drazin).

On December 27, 2012, The Bankruptcy Court conducted a hearing on McNeil's objections to Drazin's proof of claim. ECF No. 1-2 at 3 (Drazin). The Bankruptcy Court held that Drazin's fee award was a "domestic support obligation" under 11 U.S.C. § 101(14A) of the Bankruptcy Code and accordingly was not dischargeable in bankruptcy. *See* ECF Nos. 1-2 at 48-49, 1-11 at 2 (Drazin). On September 25, 2012, the Bankruptcy Court conducted a hearing on McNeil's objections to Markuski's proofs of claim, and Sarah McNeil's, Markuski's, and the Bankruptcy Trustee's objections to McNeil's proposed Chapter 13 plan.[8] ECF

---

[8] They objected to the proposed plan, because it: (1) wanted to decrease McNeil's monthly payments for alimony; and (2) did not provide for full payment of Markuski's fees, or support arrearages, over the five-year life of the plan. *See* ECF Nos. 1-2 at 38-40, 1-38 at 3 (Markuski).

6

No. 1-2 (Markuski). At the hearing, the Bankruptcy Court held
that: (1) McNeil could not reduce his alimony commitments
through the Bankruptcy Court, only through the Circuit Court;
and (2) Markuski's fee award was a "domestic support obligation"
under § 101. *See* ECF Nos. 1-2 at 46-48, 1-42 at 1-2 (Markuski).
The Bankruptcy Court also rejected McNeil's plan but gave him
leave to amend. *See* ECF Nos. 1-2 at 49-51, 1-41 at 1
(Markuski).

On November 19, 2012 and November 29, 2012, McNeil appealed
the decisions of the Bankruptcy Court on the following grounds:
(1) the Bankruptcy Court incorrectly characterized Markuski's
and Drazin's fee awards as domestic support obligations; and (2)
the Bankruptcy Court did not make its determination of the
nature and validity of the fee awards during adversary
proceedings, as required by Rule 7001 of the Federal Rules of
Bankruptcy Procedure. *See* ECF Nos. 1, 5 at 9-11 (Drazin), 1, 4
at 8-9, 12-13 (Markuski). On June 12, 2013, the Court denied
McNeil's petitions to proceed *in forma pauperis* and to use the
original record.[9] *See* ECF Nos. 7 (Drazin), 8 (Markuski).

---

[9] The appeals were dismissed on July 22, and July 23, 2013. ECF
Nos. 9 (Drazin), 10 (Markuski). The dismissals were vacated on
July 25, 2013, when the Court learned that McNeil had timely
paid the filing fees. ECF Nos. 10 (Drazin), 11 (Markuski).

II. Analysis

A. Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error; conclusions of law are reviewed *de novo*. *Nesse v. IRS of the United States,* 305 B.R. 645, 647 (D. Md. 2004) *(citing Canal Corp. v. Finnman,* 960 F.2d 396, 399 (4th Cir. 1992); *Traveler's Ins. Co. v. Bryson Prop., XVIII,* 961 F.2d 496, 499 (4th Cir. 1992)). Accordingly, the Court will review the Bankruptcy Court's decision *de novo*.

B. Adversary Proceeding

McNeil contends that the Bankruptcy Court erred, because it ruled on the nature of the fee awards as domestic support obligations, and the secured status of Drazin's fee award,[10] outside the context of an adversary proceeding, as required by Rule 7001. *See* ECF Nos. 4 at 12-13 (Markuski), 5 at 9-10, 13-14, 16-18 (Drazin). Instead, the Bankruptcy Court held hearings

---

[10] Although McNeil's argument on this issue is unclear, he appears to argue that the Bankruptcy Court erred in failing to use an adversary proceeding to determine whether Drazin's fee award was secured, and accordingly entitled to interest from the date of judgment. *See* ECF No. 5 at 11-13 (Drazin). McNeil raised this issue in his initial objection to Drazin's claim, ECF No. 1-6 at 1-2 (Drazin), and presented extensive argument on it during the hearing on the objection, ECF No. 1-2 at 34-37 (Drazin). Thus, he had notice of, and an opportunity to be heard on, this issue. Accordingly, any error in the form of proceeding was harmless because, as discussed *infra*, McNeil's due process rights were not violated. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 263, 130 S. Ct. 1367, 1373, 176 L. Ed. 2d 158 (2010).

on McNeil's objections to Drazin's and Markuski's claims.[11] *See* ECF Nos. 1-2 (Drazin), 10 (Markuski). Markuski agrees that the Bankruptcy Court should have determined the priority of his claim through an adversary proceeding, but asserts that the Bankruptcy Court committed harmless error, because the purpose of the rule is to protect *creditor* interests, and McNeil was "afforded all the protections of an adversary proceeding." *See* ECF No. 5 at 8-10 (Markuski).

Rule 7001 requires the bankruptcy court to hold an adversary proceeding "to determine the dischargeability of a debt" and "to determine the validity, priority or extent of a lien or other interest in property." *See* Fed. R. Bankr. P. 7001(4), (6); *Espinosa*, 559 U.S. at 263; *In re Reg'l Bldg. Sys., Inc.*, 254 F.3d 528, 531 (4th Cir. 2001). To initiate an adversary proceeding, the party "seeking the determination must [serve] a summons and complaint on his adversary." *Espinosa*, 559 U.S. at 263 (*citing* Rules 7003, 7004, 7008); *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995). Failure to hold the required proceeding does not deprive the bankruptcy court of

---

[11] These hearings presumably took place under Rule 3007, which provides that "[a]n objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing." Fed. R. Bankr. P. 3007(a); ECF No. 5 at 10-11 (Markuski).

jurisdiction, nor does it invalidate the bankruptcy court's judgment, as long as due process is satisfied. *See Espinosa*, 559 U.S. at 263; *In re Dides*, 04 30976 TJC, 2006 WL 4667126, at *4 (Bankr. D. Md. July 31, 2006). Due process requires notice and an opportunity to be heard. *See Espinosa*, 559 U.S. at 263. If the requirements of due process are satisfied, failure to use an adversary proceeding when required by Rule 7001 is harmless error. *See In re E-Z Serve Convenience Stores, Inc.*, 318 B.R. 631, 636 (M.D.N.C. 2004) ("[E]ven if a party does not waive his right to an adversary proceeding, the lack [thereof] will be deemed 'harmless error' [if] the failure to provide an adversary proceeding does not result in demonstrable prejudice.").

The parties agree that the Bankruptcy Court should have decided the priority and dischargeability of the fee awards by adversary proceeding. *See* ECF Nos. 4 at 9, 5 at 8 (Markuski). However, the hearings held by the Bankruptcy Court on McNeil's objections to the Drazin and Markuski proofs of claim gave McNeil due process. In their proofs of claim, Drazin and Markuski asserted that their fee awards were domestic support obligations. *See* ECF Nos. 1-52 at 1 (Markuski), 1-1 at 1 (Drazin). McNeil objected to Markuski's claim on grounds that the "Best Interest Attorney's Fees" were not "child support." ECF No. 1-19 at 2-3 (Markuski). Although McNeil did not directly challenge the characterization of Drazin's fee award as

10

a domestic support obligation in his objection, *see* ECF No. 1-6
(Drazin), Drazin responded to McNeil's objections by asserting
that his fee award was a domestic support obligation, ECF No.
1-7 at 3 (Drazin). Thus, McNeil had notice that the hearings on
his objections to the Drazin and Markuski fee awards would
address their status as domestic support obligations--
nondischargeable priority claims.[12]

During both hearings on McNeil's objections to the claims,
McNeil presented evidence and legal arguments why the fee awards
were not domestic support obligations, before the Bankruptcy
Court ruled against him.[13] *See* ECF Nos. 1-2 at 37-40, 48-49
(Drazin), 1-2 at 13-21, 28-29 (Markuski). Thus, McNeil had an
opportunity to be--and was--heard on this issue. Moreover, if
McNeil believed that his due process rights were violated by the
form of hearing held by the Bankruptcy Court, he could have

---

[12] *See Espinosa*, 559 U.S. at 272 ("actual notice . . . more than
satisfied [the creditor's] due process rights" when debtor
failed to properly initiate an adversary proceeding).

[13] McNeil contends that he did not have notice that the December
27, 2012 hearing would determine the priority of Drazin's claim.
*See* ECF No. 5 at 8 (Drazin). However, his arguments to the
Bankruptcy Court addressed whether Drazin's fee award was a
domestic support obligation. *See* ECF No. 1-2 at 37-40, 48-49
(Drazin). Because such obligations are always entitled to first
priority in Chapter 13, *see* 11 U.S.C. § 507(a)(1), by having
notice and an opportunity to be heard on the issue of whether
the fee award was a domestic support obligation, McNeil's due
process rights were satisfied as to priority, *see In re Uzaldin*,
418 B.R. 166, 171 (Bankr. E.D. Va. 2009).

11

filed an adversary proceeding after the hearing,[14] or raised the issue in his October 9, 2012 motion to reconsider the Bankruptcy Court's ruling, *see* ECF No. 1-45 (Markuski). Accordingly, the Bankruptcy Court's failure to use an adversary proceeding to decide if Drazin's and Markuski's fee awards were domestic support obligations, entitled to first priority and nondischargeable, was harmless error because due process was given.[15]

   B. Attorney's Fees as Domestic Support Obligations

   1. Law Applicable to Both Appeals

   Debts "in the nature of alimony, maintenance, or support" are considered priority debts and are not dischargeable in a Chapter 13 bankruptcy. *See Uzaldin*, 418 B.R. at 171-72. McNeil asserts that Markuski's and Drazin's awards of attorney's fees

---

[14] *See, e.g.*, *In re Copper King Inn, Inc.*, 918 F.2d 1404, 1406 (9th Cir. 1990) ("Because [the creditor] did not object to the form of the proceeding until several weeks after it was held, it is in a poor position to complain that the bankruptcy court failed to label the hearing 'adversarial' or invoke Rules 3007 and 7001."); *Hijjawi v. Five N. Wabash Condo. Ass'n*, 495 B.R. 839, 844-45 (N.D. Ill. 2013) (Adversary proceeding function satisfied when "[n]either party contested the procedures below or filed an adversary complaint. Both parties had plenty of notice and ample opportunity to be heard on the issue of dischargeability before the bankruptcy court made its determination.").

[15] *See Barner v. Saxon Mortg. Servs. (In re Barner)*, 597 F.3d 651, 654 (5th Cir. Miss. 2010) (seeking relief by motion instead of adversary proceeding did not affect substantial rights, where "parties had a full hearing on the merits before the bankruptcy court and the ability to litigate all questions of law").

are not priority debts, because they are not debts "in the nature of support." *See* ECF Nos. 5 at 19 (Drazin), 4 at 13-14 (Markuski).

"Federal bankruptcy law, not state law, determines whether a debt is in the nature of support." *In re Pagels*, 10-71138-SCS, 2011 WL 577337, at *8 (Bankr. E.D. Va. Feb. 9, 2011) (*citing In the Matter of Long,* 794 F.2d 928, *8 (4th Cir. 1986)). The 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amended the Bankruptcy Code by adding and defining the term "domestic support obligation" to refer to debts in the nature of alimony, maintenance, or support. *See In re Marshall*, 489 B.R. 630, 634-35 (Bankr. S.D. Ga. 2013).

BAPCPA defines a domestic support obligation as a debt that is:

> (A) owed to or recoverable by--
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support . . .
> of such spouse, former spouse, or child of the debtor or
> such child's parent, without regard to whether such debt is
> expressly so designated;
> (C) established . . . by reason of applicable provisions
> of--(ii) an order of a court of record; [and][16]
> (D) not assigned to a nongovernmental entity, unless that
> obligation is assigned voluntarily by the spouse, former
> spouse, child of the debtor, or such child's parent, legal
> guardian, or responsible relative for the purpose of
> collecting the debt.

11 U.S.C. § 101(14A).

---

[16] McNeil does not dispute that Drazin's and Markuski's awards of attorney's fees were established by court orders. *See, e.g.*, ECF No. 6 at 8 (Markuski).

13

McNeil faults the Bankruptcy Court for relying on pre-BAPCPA case law that attorney's fee awards in domestic disputes are in the nature of support and are, accordingly, non-dischargeable. *See, e.g.*, ECF No. 4 at 11 (Markuski). He asserts that, following BAPCPA's passage, only debts "owed to or recoverable by" the debtor's spouse, former spouse or children are in the nature of support. *See id.*; 11 U.S.C. § 101(14A)(A). Markuski contends that the weight of authority both pre- and post-BAPCPA holds that a debt owed to an attorney arising out of a domestic case may be a domestic support obligation, because the nature of the debt controls, not the identity of the payee. ECF No. 5 at 14-15 (Markuski). As long as the debt is "in the nature of support," it does not have to be "directly payable to a spouse or minor child." *Id.* at 14.

Post-BAPCPA, the weight of authority of bankruptcy courts in this circuit and others is that attorney fee debts awarded in domestic litigation may qualify as domestic support obligations, even if they are not payable directly to the debtor's spouse, former spouse, or child. *See, e.g.*, *Uzaldin*, 418 B.R. at 172-73 ("Attorney's fees follow the nature of the principal award. If the principal award is a domestic support obligation, the attorney's fees incidental to obtaining the domestic support obligation are also treated as a domestic support obligation.");

*Marshall*, 489 B.R. at 634-35; *In re Andrews*, 434 B.R. 541, 546 (Bankr. W.D. Ark. 2010) ("Bankruptcy courts in the Eighth Circuit have ruled that the BAPCPA amendment does not substantively change the statute . . . .").[17] Because the term "domestic support obligation" in § 101 derives from the "the definition of a nondischargeable debt for alimony, maintenance, and support contained" in the prior version of the Bankruptcy Code, the case law construing the prior Code's language remains "relevant and persuasive." *See Pagels*, 2011 WL 577337, at *8; *In re Poole*, 383 B.R. 308, 313-14 (Bankr. D.S.C. 2007) (concluding that BAPCPA's addition of the words debts "*recoverable by*" a spouse "does not appear intended to narrow the field of payees when compared to the former language" of the statute).

Pre-BAPCPA case law almost uniformly concluded that attorney fee awards from domestic litigation were "in the nature of support" and not dischargeable in bankruptcy, even if payable to the attorney directly. *See, e.g.*, *Silansky v. Brodsky, Greenblatt & Renehan (In re Silansky)*, 897 F.2d 743, 744 (4th Cir. 1990) (*citing In Re Spong*, 661 F.2d 6 (2d Cir. 1981))

---

[17] *But see In re Watson*, 402 B.R. 294, 298 (Bankr. N.D. Ind. 2009) (noting that "[t]he court has previously determined in several decisions that" an attorney's claim for fees does not constitute a 'domestic support obligation' because it is not owed to or recoverable by the class of payees designated in . . . 11 U.S.C. § 101(14A)(A)(I)"); *In re Orzel,* 386 B.R. 210 (Bankr. N.D. Ind. 2008).

15

("Most courts have classified an award of attorney's fees in a divorce judgment as a nondischargeable debt in the category of alimony, maintenance, and support.").[18] Accordingly, as long as an attorney's fee award is in the nature of support under § 101(14A)(B), it qualifies as a domestic support obligation even if directly payable to the attorney.[19] *See In re Pennington*, BR 10-31642, 2011 WL 6210729, at *5 (Bankr. W.D.N.C. Dec. 14, 2011) ("It is the nature of the debt, rather than the identity of the creditor, that controls.").[20]

---

[18] *See also, e.g., Pauley v. Spong (In re Spong),* 661 F.2d 6, 11 (2d Cir. 1981) ("[I]t would be exalting form over substance to fail to treat appellee's agreement to pay his wife's counsel fee as a debt to a spouse for alimony maintenance, or support, and that, therefore, it is nondischargeable in bankruptcy.") (internal quotation marks and punctuation omitted)); *Dvorak v. Carlson (In re Dvorak),* 986 F.2d 940, 941 (5th Cir. 1993); *Holliday v. Kline (In re Kline),* 65 F.3d 749, 751 (8th Cir. 1995); *Matter of Hudson,* 107 F.3d 355, 357 (5th Cir. 1997); *In re Gwinn,* 20 B.R. 233, 234 (9th Cir. BAP 1982).

[19] At least one case holds that attorney's fees awarded in divorce litigation are indirectly "owed to or recoverable by" the former spouse, because, if the debtor does not pay, the attorney can likely recover in *quantum meruit* against the former spouse. *Andrews,* 434 B.R. at 547; *see also In re Johnson,* 397 B.R. 289, 295-26 (Bankr. M.D.N.C. 2008) (a debt payable to a bank was "recoverable by" the spouse because, if the debtor did not pay, the spouse would have to pay the bank and subsequently seek to recover from the debtor).

[20] *See also Kassicieh v. Battisti (In re Kassicieh),* 425 B.R. 467, 476-77 (Bankr. S.D. Ohio 2010); *Levin v. Greco,* 415 B.R. 663, 666-67 (N.D. Ill. 2009).

16

### 2. Drazin Appeal

McNeil does not dispute the Bankruptcy Court's findings that the Drazin fee award was in the nature of support.[21] *See* ECF Nos. 1-2 at 48-49, 5 at 10 (Drazin). Accordingly, the Bankruptcy Court's holding that this fee award is a domestic support obligation under 11 U.S.C. § 101(14A) will be affirmed. *See* ECF No. 1-11 (Drazin); *In re Baker*, 12-01090-8-SWH, 2012 WL 6186683, at *6-*7 (Bankr. E.D.N.C. Dec. 12, 2012) (citing numerous decisions that "conclude[e] that the award of attorney's fees in a proceeding related to a divorce decree . . . is in the nature of maintenance or support.").

### 3. Markuski appeal

McNeil asserts that the Markuski fee award is not in the nature of support, because: (1) the debt was not owed to a member of his family; and (2) even if Markuski's fees were generated for the benefit of McNeil's children, not all debts incurred for the benefit of a debtor's children are priority claims. ECF No. 6 at 8 (Markuski).[22]

---

[21] The Bankruptcy Court did not explicitly find that Drazin's fee award was not assigned to a nongovernmental entity, as required by 11 U.S.C. § 101(14A)(D), however there is no evidence in the record that the debt was assigned, and McNeil does not allege that the debt was assigned. *See* ECF Nos. 1-2 at 48-49, 5 at 10 (Drazin).

[22] McNeil also asserts that the fee award is not a domestic support obligation, because it violates § 101(14A)(D). ECF No. 6 at 9 (Markuski). He contends that "Congress dictated unless a

The standard for whether a claim is in the nature of
support is the same pre-BAPCPA as post-BAPCPA. *See In re
Phegley*, 443 B.R. 154, 157 (B.A.P. 8th Cir. 2011); *In re
Krueger*, 457 B.R. 465, 474 (Bankr. D.S.C. 2011) ("[The] Court
looks to the interpretation of [domestic support obligations] in
[pre-BAPCPA] case law involving the dischargeability of
debts.").[23] The claimant has the burden of showing whether his
claim is in the nature of support,[24] and this is a fact-specific
analysis, *see Pagels*, 2011 WL 577337, at *7. If the claim arose
from a court order, the obligation is in the nature of support
if the issuing court intended to create such an obligation. *In
re Peterson*, 12-00793-8-SWH, 2012 WL 5985269, at *2 (Bankr.
E.D.N.C. Nov. 29, 2012). To determine the court's intent, the
bankruptcy court looks to the terms of the court order, but the
labels given to the obligations by the issuing court do not

---

debt is owed to" a spouse, former spouse, or child, "that all
other entities are not entitled to priority unless" the debt was
"voluntarily assigned." ECF No. 6 at 9 (Markuski). There is no
evidence in the record that this debt was assigned to any
entity, voluntarily or not. Accordingly, the Markuski fee award
does not violate § 101(14A)(D). *See In re Deberry*, 429 B.R.
532, 538 (Bankr. M.D.N.C. 2010) (debt was a domestic support
obligation if, *inter alia*, it was "not assigned other than for
collection purposes").

[23] *See also In re Hickey*, 473 B.R. 361, 364 (Bankr. D. Or. 2012);
*In re LaGrange*, BK08-82468-TLS, 2009 WL 1484623, at *2 (Bankr.
D. Neb. May 27, 2009).

[24] *Baker*, 2012 WL 6186683, at *4 (*citing Tilley v. Jessee,* 789
F.2d 1074, 1077 (4th Cir. 1986)).

control. *Id.* at *3; *In re Levin*, 306 B.R. 158, 163 (Bankr. D.

Md. 2004). Other relevant factors include:

> [T]he nature of the obligation, whether there are
> dependent children, the relative earning power of the
> spouses and an indication that the obligation was an
> attempt to balance it, the adequacy of the dependent
> spouse's support without the assumption of the
> obligation, dependent spouse's receipt of inadequate
> assets in settlement, status of the obligation upon
> death or remarriage, timing of payments (lump sum or
> periodic), the payee (direct vs. indirect), waivers of
> maintenance, whether the obligation is modifiable,
> location of the paragraph containing the obligation
> within the agreement (whether or not it is located
> within the property distribution section), and the tax
> treatment of the obligation.

*Baker*, 2012 WL 6186683, at *4. Several cases have held that

fees awarded to an attorney or guardian ad litem appointed to

represent the best interests of the children in divorce

litigation are in the nature of support. *See, e.g.*, *In re*

*Blaemire*, 229 B.R. 665, 668 (Bankr. D. Md. 1999); *In re Soffee*,

337 B.R. 837, 840 (Bankr. E.D. Va. 2004); *see also In re*

*Maddigan*, 312 F.3d 589, 594 (2d Cir. 2002) (custody dispute).

The Howard County Circuit Court stated on multiple

occasions that Markuski's fees were "necessary to protect the

separate interests of each child in this highly conflicted

case." ECF Nos. 1-14 at 41, 1-37 at 40 (Markuski). The Circuit

Court also notes that several of the motions which required

Markuski's participation involved matters related to custody.

*See* ECF No. 1-14 at 41 (Markuski). These statements indicate

that the Circuit Court intended for the awards of Markuski's fees to be obligations in the nature of support. *See Matter of Dvorak*, 986 F.2d 940, 941 (5th Cir. 1993) (finding that fees of guardian ad litem generated during a custody hearing were in the nature of support, because hearing "was clearly for [the child's] benefit and support"). In addition, the Circuit Court noted that it made its award of fees based on "the financial resources and needs of the parties and the need for the involvement of the Best Interest Attorney." ECF No. 1-14 at 40-41 (Markuski). The Circuit Court stated that Sarah McNeil is "justifiably unemployed" and that she is not "required to obtain a new job until her vocational training is completed," while McNeil has significant income. *Id.* at 30, 35, 38; *see also* ECF No. 1-37 at 40-41 (Markuski). These statements indicate that the fee awards took into account, and "attempt[ed] to balance, . . . the relative earning power of the spouses" and considered "the adequacy of" Sarah McNeil's "support without [McNeil's] assumption of the obligation." *See Baker*, 2012 WL 6186683, at *4. Finally, the Circuit Court noted that Sarah McNeil "must continue to care to the daily needs of the parties' two minor children," as she has sole custody, whereas McNeil is only allowed "supervised visitation" with the children. ECF No. 1-14 at 35 (Markuski). These statements indicate that the "dependent children" were a strong consideration in the fee award. *See*

*Baker*, 2012 WL 6186683, at *4. Thus, several *Baker* factors and the awarding court's intent support the Bankruptcy Court's finding that Markuski's fees were "in the nature of support." *See Peterson*, 2012 WL 5985269, at *3, *5; *see also Blaemire*, 229 B.R. at 668 ("[T]he best interest of the child is an inseparable element of the child's 'support.'") (*quoting In re Jones*, 9 F.3d 878, 881 (10th Cir. 1993)). Accordingly, the Bankruptcy Court's holding that Markuski's fees qualified as domestic support obligations will be affirmed.

III. Conclusion

For the reasons stated above, the Bankruptcy Court's orders will be affirmed.

___10/9/13___
Date

_____
William D. Quarles, Jr.
United States District Judge